# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JAMES RYAN,** | |
| **Plaintiff,** | |
| **v.** | **Case No. CIV-18-548-F** |
| **SAFECO INSURANCE COMPANY OF AMERICA,** | |
| **Defendant.** | |

## DEFENDANT SAFECO INSURANCE COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Dated:      December 3, 2018

Respectfully submitted,

**HALL, ESTILL, HARDWICK,
GABLE, GOLDEN & NELSON, P.C.**

William W. O'Connor, OBA No. 13200
Jerrick L. Irby, OBA No. 30876
Margo E. Shipley, OBA No. 32118
320 South Boston Avenue, Suite 200
Tulsa, OK 74103-3706
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
boconnor@hallestill.com
jirby@hallestill.com
mshipley@hallestill.com

**ATTORNEYS FOR DEFENDANT,
SAFECO INSURANCE COMPANY
OF AMERICA**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................ 1

STATEMENT OF UNDISPUTED FACTS ...................................................................... 4

    The Policy ................................................................................................................ 4

    Safeco's Initial Investigation, Evaluation, and Payment of Plaintiff's Claim ......... 6

    Plaintiff Retains a Public Adjuster .......................................................................... 9

    Safeco's Thwarted Re-Inspection .......................................................................... 10

    Safeco's Supplemental Personal Property Payment ............................................... 11

    Safeco's Construction and Damages Expert, Michael J. Berryman ...................... 11

    Plaintiff's Lack of Supporting Evidence and Non-Compliance with
    Court Orders .......................................................................................................... 14

SUMMARY JUDGMENT STANDARD .......................................................................... 14

ARGUMENT AND AUTHORITY ................................................................................... 16

    I.     Safeco Respectfully Submits that Summary Judgment is Proper on
            Plaintiff's Claim for Breach of Contract .................................................... 16

    II.    Safeco Respectfully Submits that Summary Judgment is Proper on
            Plaintiff's Claim for Breach of the Duty of Good Faith and Fair
            Dealing ....................................................................................................... 19

          A.    Safeco Was Not Required Under the Insurance Policy to Pay
                Plaintiff Additional Insurance Benefits ........................................... 20

          B.    Safeco Acted Reasonably And, Therefore, Bad Faith Cannot
                Exist As a Matter of Law ................................................................ 21

          C.    Safeco and Plaintiff Have a Legitimate Disput as to Coverage ....... 22

          D.    Safeco's Conduct Was Not the Direct Result of Any Injury
                To Plaintiff ....................................................................................... 23

III.    Safeco Respectfully Seeks Summary Judgment on Plaintiff's Claim
        For Punitive Damages ................................................................... 24

CONCLUSION ............................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page**

### <u>CASES</u>

*Adler v. Wal-Mart Stores, Inc.*,
144 F.3d 664 (10th Cir. 1998) ........................................................................... 15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................... 15

*Andres v. Okla. Farm Bureau Mut. Ins. Co.*,
2009 OK CIV APP 97, 227 P.3d 1102 ............................................... 19, 21, 22

*Beers v. Hillory*,
2010 OK CIV APP 99, 241 P.3d 285 ................................................................ 21

*Bennett v. Windstream Commc'ns, Inc.*,
30 F. Supp. 3d 1243 (N.D. Okla. 2014) ...................................................... 14, 15

*Bryant v. Sagamore Ins. Co.*,
No. 14-7039 (10th Cir. 2015) (unpublished) .................................................... 18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..................................................................................... 14, 15

*Christian v. American Home Assurance Co.*,
1977 OK 141, 577 P.2d 899 .............................................................................. 19

*Digital Design Grp., Inc. v. Info. Builders, Inc.*,
2001 OK 21, 24 P.3d 834 .................................................................................. 16

*Duensing v. State Farm Mut. Auto Ins. Co.*,
2006 OK CIV APP 15, 131 P.3d 127 ................................................................ 23

*Dunbar v. State Farm Mut. Auto. Ins. Co.*,
Case No. 10-CV-330-GKF-TLW, 2011 WL 5878383
(N.D. Okla. Nov. 23, 2011) .......................................................... 19, 21, 22, 23

*First Bank of Turley v. Fidelity and Deposit Ins. Co. of Maryland*,
1996 OK 105, 928 P.2d 298 .............................................................................. 18

*Gillham v. Lake Country Raceway*,
2001 OK 41, 24 P.3d 858 .................................................................................. 23

iv

*Haltom v. Great Nw. Ins. Co.*,
460 F. App'x 751 (10th Cir. 2012) ................................................................................... 22

*Harrison v. State Farm Fire and Cas. Co.*,
Case No. CIV-14-1219-R, 2015 WL 4208749 (W.D. Okla. July 20, 2015) .............. 16, 20

*Matsushita v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ......................................................................................................... 15

*McCorkle v. Great Atlantic Ins. Co.*,
1981 OK 128, 637 P.2d 583 ........................................................................................ 19, 20

*McLaughlin v. National Benefit Life Ins. Co.*,
772 P.2d 383 (Okla. 1988) ............................................................................................... 24

*Rodebush v. Okla. Nursing Homes*,
1993 OK 160, 867 P.2d 1241 ...................................................................................... 24, 25

*Shanta, Inc. v. Nautilus Insurance Company*,
Case No. CIV-15-872-R, 2017 WL 934720, (W.D. Okla. Mar. 8, 2017) ........................ 20

*Snow White, LLC v. State Auto Property and Casualty Ins. Co.*,
Case No. CIV-14-1397-F, 2016 WL 9558944 (W.D. Okla. Oct. 14, 2016) .............. 20, 23

*Willis v. Midland Risk Ins. Co.*,
42 F.3d 607 (10th Cir. 1994) ...................................................................................... 24, 25

## **STATUTES**

OKLA. STAT. tit. 23§ 9.1 .................................................................................................... 24

## **OTHER AUTHORITIES**

FED. R. CIV. P. 26 ......................................................................................................... 4, 14

FED. R. CIV. P. 56 ................................................................................................. 1, 14, 16

LCvR7.1 ............................................................................................................................. 1

LCvR56.1 ........................................................................................................................... 1

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7.1 and 56.1, Defendant Safeco Insurance Company of America ("Safeco") respectfully requests that the Court enter summary judgment in its favor on Plaintiff James Ryan's ("Plaintiff") claims for breach of contract, breach of the duty of good faith and fair dealing, and request for punitive damages. Safeco has issued payment for all covered storm damages to Plaintiff's residence. Plaintiff claims he is entitled to additional payments, including a full roof replacement, but has supplied no evidence to support these contentions. Safeco respectfully submits that, as a matter of law, it has not breached the contract of insurance or acted in bad faith, and summary judgment is appropriate.

## **INTRODUCTION**

Plaintiff alleges that on April 25, 2017, a storm struck his residence, causing exterior damage and interior water damage. Plaintiff reported the claim to Safeco nearly two months later, on June 13, 2017. Safeco immediately opened a claim and assigned an adjuster, Michael Williams ("Williams"), who contacted Plaintiff and scheduled an inspection of the home. The inspection took place on June 16, 2017. During the inspection, Williams found over-driven nails in the 40-year shingles of the home's roof, which had contributed to the damage. Williams wrote an estimate to repair storm damage to the home's exterior in total amount of $8,605.34. That same day, Williams sent Plaintiff a letter explaining Safeco's estimate and payment and enclosing a payment check. After deductions for recoverable depreciation of $2,338.32 and Plaintiff's deductible of $3,242.00, Safeco's payment to Plaintiff totaled $3,025.02. In the letter, Williams also explained that Safeco was partially denying the claim for interior water damage. Given the

1

damage caused by the over-driven shingles—and the late reporting of the claim—the interior water damage was plainly excluded under Policy provisions barring coverage for repeated seepage or leakage and faulty workmanship.

A month and a half after Safeco sent this payment letter, Plaintiff's insurance agent contacted Safeco to discuss the claim.  This agent spoke with a Team Manager, Emilio Marroquin ("Marroquin"), who explained the claims decision and offered that if Plaintiff disagreed with Safeco's claims decision, he could participate in the appraisal process. Plaintiff never requested an appraisal.

Rather, Plaintiff decided to retain a public adjuster, Kent Edwards ("Edwards").[1] Approximately six months after the storm and four months after Safeco's payment letter, Edwards sent Williams a facsimile indicating he had been retained by Plaintiff.  Edwards subsequently supplied a repair estimate from a contractor, Sean Wiley ("Wiley"), in the amount $41,013.00 for repairs to the home, plus $509.47 for damage to other structures and $1,961.35 for "code upgrades"—in total, roughly five (5) times Safeco's estimate. Edwards insisted that Plaintiff's roof was comprised of 50-year shingles that were no longer manufactured, entitling him to a full roof replacement, and demanded a re-inspection of Plaintiff's property.  Despite his observations at the initial inspection that Plaintiff's shingle was clearly a 40-year shingle, meaning the roof could be repaired, Williams agreed to re-inspect the residence to confirm the quality of the roof shingles.

On December 19, 2017, Williams arrived at Plaintiff's residence to re-inspect the

---

[1] Edwards was to receive 15% of any insurance benefits received from Safeco.

roof.  Also present were a representative from Hancock Roofing and Construction, LLC ("Hancock"), who provided a ladder assist, and Plaintiff's public adjuster, Edwards.  At the outset of the inspection, Edwards demanded that Williams measure a particular shingle on the gable end of the roof.  Williams advised Edwards that Hancock's representative would measure a random sampling of shingles on all four slopes.  Edwards became upset at this decision and moved Hancock's ladder from the roof's safe access point.  Williams repeatedly asked Edwards not to touch Hancock's ladder.  Due to Edwards moving the ladder away from safe access to the roof, Williams and Hancock's representative terminated the inspection due to unsafe working conditions.  Williams then advised Edwards that Safeco would stand on its prior claims decision.  Plaintiff subsequently filed this litigation, in which he asserts claims against Safeco for breach of contract and bad faith.

After Plaintiff filed suit, Safeco retained an expert witness, Michael J. Berryman ("Berryman").  Berryman re-inspected the residence and has concluded that Safeco followed industry standard methods and that Safeco's estimate was adequate to restore the known storm damage.  Berryman opines that Wiley's estimate is based upon a scope of work that goes well beyond the restoration of damages caused by the storm.  Berryman states that Wiley's estimate is woefully inaccurate and without merit, as it is inflated and misrepresents what will actually be required to restore the claimed storm damage.  Berryman concurs with Williams' conclusion that the shingles are a 40-year shingle, and the roof can be repaired rather than replaced.

Plaintiff has not presented any evidence supportive of his "claims" against Safeco, nor can he.  Plaintiff did not timely disclose any experts and has never supplied the expert

disclosures required by FED. R. CIV. P. 26(a)(2)(B).[2]  Plaintiff did not timely disclose any witnesses or exhibits in accordance with the Court's Scheduling Order.[3]   Nor has Plaintiff served any written discovery requests or taken any depositions in this matter.

Safeco respectfully submits that there is no genuine dispute as to any material fact, and summary judgment is appropriate.  The record evidence undisputedly shows that Safeco did not breach the contract of insurance.  Rather, Safeco compensated Plaintiff for all covered storm damage.  Plaintiff cannot show that Safeco acted in "bad faith" in any respect, nor has Plaintiff shown evidence of any acts entitling him to punitive damages. Therefore, Safeco respectfully seeks judgment as a matter of law on Plaintiff's claims for breach of contract and bad faith and Plaintiff's request for punitive damages.

## STATEMENT OF UNDISPUTED FACTS

*-The Policy-*

1.     Plaintiff had a homeowners' Policy of insurance with Safeco, which was effective from February 28, 2017, to February 28, 2018.   Exhibit 1, Policy, at

---

[2] Pursuant to the Scheduling Order, Plaintiff was ordered to file a final list of expert witnesses in chief and submit expert reports on or before October 20, 2018.  Plaintiff failed to disclose any expert witnesses by this date.  On November 14, 2018, without leave of Court, Plaintiff belatedly supplied an "Expert Witness List" which named Edwards and Wiley as "experts."  Doc. No. 11.  On November 28, 2018, Plaintiff belatedly disclosed yet another expert, Dr. Jack Werner, Ph.D.  Doc. No. 18.  Plaintiff has never supplied the required Rule 26 expert disclosures for any of these "experts."  Safeco has filed a Motion to Strike Plaintiff's "Experts."  Doc. No. 20.

[3] In accordance with the Scheduling Order, Plaintiff was required to file final lists of witnesses and exhibits by November 10, 2018.  Doc. No. 9.  Plaintiff did not file any witness or exhibit list by that date but, instead, belatedly filed his witness and exhibit lists on November 28, 2018, without leave of Court.  Doc. Nos. 17, 18.  Safeco has filed a Motion for Sanctions predicated upon Plaintiff's untimely, prejudicial disclosures.  Doc. No. 15.

SAFECO_000009.

2.      The Policy included Dwelling coverage and Personal Property coverage.

Exhibit 1, Policy, at SAFECO_000009.

3.      The Policy contains the following exclusions:

We do not cover loss caused directly or indirectly by any of the following excluded perils.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area;

. . .

5. continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor which occurs over a period of weeks, months or years.

. . .

18. Planning, Construction, or Maintenance, meaning faulty, inadequate or defective:
a. planning, zoning, development, surveying, siting;
b. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
c. materials used in repair, construction, renovation or remodeling; or
d. maintenance;
of property whether on or off the *insured location* by any person or organization.  However, any ensuing loss not excluded is covered.

Exhibit 1, Policy, at SAFECO_000013, 14, 16.

4.      The Policy includes the following duties of the insured:

An Insured's Duties After Loss.  In case of a loss to which this insurance may apply, you must perform the following duties:

a. cooperate with us in the investigation, settlement, or defense of any claim or suit;
b. give immediate notice to us or our agent;
. . .

d. protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenses;

e. prepare an inventory of the loss to the building and damaged personal property showing in detail the quantity, description, replacement cost and age.  Attach all bills, receipts and related documents that justify the figures in the inventory;

f. as often as we reasonably require:

(1) exhibit the damaged and undamaged property;

(2) provide us with records and documents we request and permit us to make copies; and

(3) submit to examinations under oath and subscribe the same. . . .

Exhibit 1, Policy, at SAFECO_000023-24.

*-Safeco's Initial Investigation, Evaluation, and Payment of Plaintiff's Claim-*

5.      On June 13, 2017, Plaintiff called Safeco and reported that his insured residence had been damaged by hail.  Exhibit 2, Claim File, at SAFECO_000341.

6.      Plaintiff contended his residence was damaged during a storm nearly two months prior, on April 25, 2017.  Exhibit 3, Affidavit of Michael Williams ("Williams Affidavit"); *see also* Doc. No. 3-1, Petition.

7.      During Plaintiff's first call to Safeco, a Safeco employee informed him that his claim had been assigned claim number 652001066002 and that an adjuster would reach out to him within one business day.  Exhibit 2, Claim File, at SAFECO_000341.

8.      Safeco assigned the claim to adjuster Michael Williams.   Williams telephoned Plaintiff the following day, June 14, 2017, to discuss the claim.  Exhibit 2, Claim File, at SAFECO_000338.

9.      During the June 14, 2017 telephone call, Plaintiff stated there was a water stain on the inside of his closet and damage to the roof.  Plaintiff stated that his contractor,

American Standard Roofing, had advised the roof had wind and hail damage.  Exhibit 2, Claim File, at SAFECO_000338.

10.     Two days later, on June 16, 2017, Williams inspected Plaintiff's property along with a representative of Hancock Roofing and Construction, LLC ("Hancock"), who provided a ladder assist.  Plaintiff was also present, along with his contractor.  Exhibit 2, Claim File, at Safeco_000331; Exhibit 3, Williams Affidavit.

11.     On June 16, 2017, following the inspection, Williams compiled an estimate to repair the damage to the exterior of Plaintiff's home, including repairs to the roof, in the total Replacement Cost Value amount of $8,605.34.   Exhibit 2, Claim File, at SAFECO_000325-330; Exhibit 3, Williams Affidavit.

12.     That same day, June 16, 2017, Williams sent Plaintiff a letter explaining the payment for the exterior repairs and enclosing a payment check.  Once recoverable depreciation of $2,338.32 and Plaintiff's Policy deductible of $3,025.02 were deducted from Williams' total estimate of $8,605.34, the total net payment to Plaintiff was $3,025.02. Exhibit 2, Claim File, at SAFECO_000332-334; Exhibit 3, Williams Affidavit.

13.     In the June 16, 2017 letter, Williams also explained that Safeco was unable to pay for the claimed interior water damage because the Policy did not provide coverage for that portion of the loss.   Exhibit 2, Claim File, at SAFECO_000332-334; Exhibit 3, Williams Affidavit.

14.     Safeco's reasons for this partial denial were as follows:

As you are aware, this claim arises from storm damage to your residence. Our investigation revealed that a portion of the shingles on your roof were improperly installed by being over-driven and the interior leaking was the

7

result of a long-term leak.  Your SAFECO HOMEOWNERS POLICY (HOM-7030EP 1/09), BUILDING PROPERTY LOSSES WE DO NOT COVER section states in part:

We do not cover loss caused directly or indirectly by any of the following excluded perils.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

5. continuous or repeated seepage or leakage of water or steam, or the presence of condensation of humidity, moisture or vapor which occurs over a period of weeks, months or years.

18. Planning, Construction, or Maintenance, meaning faulty, inadequate or defective:
a. planning, zoning, development, surveying, siting;
b. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
c. materials used in repair, construction, renovation or remodeling; or
d. maintenance;
of property whether on or off the insured location by any person or organization.  However, any ensuing loss not excluded is covered.

Exhibit 2, Claim File, at SAFECO_000332-334; Exhibit 3, Williams Affidavit.

15.     Williams further explained in the June 16, 2017 letter that according to the terms and conditions of Plaintiff's Policy referenced above in BUILDING PROPERTY LOSSES WE DO NOT COVER, Safeco was unable to provide any coverage for improperly installed shingles or interior leaking.   Exhibit 2, Claim File, at SAFECO_000332-334; Exhibit 3, Williams Affidavit.

16.     On August 3, 2017, Plaintiff's insurance agent called Safeco to discuss the claim and spoke with Team Manager Emilio Marroquin.  Exhibit 2, Claim File, at SAFECO_000256.

17.     Marroquin explained to Plaintiff's agent that he reviewed the inspection photographs and did not see enough damage to warrant replacement of the roof.  Exhibit 2, Claim File, at SAFECO_000256.

18.     Marroquin explained that if Plaintiff disagreed with Safeco's findings, he could invoke the appraisal process.  Exhibit 2, Claim File, at SAFECO_000256.

19.     The same day, August 3, 2017, Marroquin also sent Plaintiff's agent a follow-up email containing the Policy language concerning the appraisal process.  Exhibit 2, Claim File, at SAFECO_000248.

20.     In his email, Marroquin explained, "[a]s I stated the roof is a 40[-year] rated roof and that may be a reason that it didn't receive as much damage as other roofs in the area.  Exhibit 2, Claim File, at SAFECO_000248.

21.     Plaintiff never invoked the appraisal process.

*-Plaintiff Retains a Public Adjuster-*

22.     Instead, nearly two-and-a-half months later, on October 18, 2017, Williams received a facsimile from Kent Edwards with K.E. Edwards, Inc., indicating that Plaintiff had retained him as a public adjuster.  Exhibit 2, Claim File, at SAFECO_000237-247.

23.     Plaintiff has a contract with Edwards to pay him 15% of all settlement or recovery received from Safeco.  Exhibit 4, Public Adjuster Contract, KE_000120-122.

24.     Edwards advised Williams of his belief that Plaintiff's roof shingle was a 50-year shingle that was no longer manufactured and requested that Williams re-inspect Plaintiff's roof.  Exhibit 2, Claim File, at SAFECO_000199; Exhibit 3, Williams Affidavit.

25.     Edwards supplied an estimate from Sean Wiley Estimating and Appraisals for Dwelling repairs, including interior damage and a full roof replacement, in the Replacement Cost Value amount of $41,013.00; and Other Structures repairs in the Replacement Cost amount of $509.47; and Ordinance and Law code upgrade items totaling $1,961.35.  Exhibit 2, Claim File, at SAFECO_000206-216.

26.     Williams explained to Edwards that Safeco's photographs from its inspection clearly showed a 40-year shingle, rather than a 50-year shingle.  However, Williams, agreed to re-inspect Plaintiff's roof to confirm the quality of the shingles.  Exhibit 2, Claim File, at SAFECO_000070; Exhibit 3, Williams Affidavit.

*-Safeco's Thwarted Re-Inspection-*

27.     On December 19, 2017, Williams arrived at Plaintiff's residence to re-inspect the roof. Also present were a representative from Hancock, Blake, who provided a ladder assist, and Plaintiff's public adjuster, Edwards.  Exhibit 2, Claim File, at SAFECO_000067; Exhibit 3, Williams Affidavit.

28.     At the outset of the inspection, Edwards told Blake with Hancock to measure a particular shingle on the gable end of the roof, and was insistent that this particular shingle be measured.  Williams advised Edwards that Hancock would measure shingles on all four slopes and would randomly choose shingles since all shingles would be the same quality. Exhibit 2, Claim File, at SAFECO_00067; Exhibit 3, Williams Affidavit.

29.     Edwards became upset at Williams' decision to randomly choose which shingles to gauge.   Exhibit 2, Claim File, at SAFECO_00067; Exhibit 3, Williams Affidavit.

10

30.     Blake with Hancock placed his ladder at the valley for safe access to the roof. Edwards chose to move Hancock's ladder from the safe access point.  Both Blake and Williams repeatedly asked Edwards not to touch Hancock's ladder.  Exhibit 2, Claim File, at SAFECO_00067; Exhibit 3, Williams Affidavit.

31.     Due to Edwards moving the ladder away from safe access to the roof, Blake with Hancock terminated the inspection because he was placed in unsafe working conditions by Edwards.  Exhibit 2, Claim File, at SAFECO_00067; Exhibit 3, Williams Affidavit.

32.     Williams advised Edwards that his prior inspection photographs and report showed 40-year shingles, not 50-year shingles; therefore, Safeco would stand on its prior claims decision.  Exhibit 2, Claim File, at SAFECO_00067; Exhibit 3, Williams Affidavit.

*-Safeco's Supplemental Personal Property Payment-*

33.     In its ongoing adjustment of the claim, Safeco has also issued payment to Plaintiff in the amount of $269.84 for damaged contents, specifically, a Rubbermaid outdoor shed and an outdoor storage box.  Exhibit 3, Williams Affidavit.

*-Safeco's Construction and Damages Expert, Michael J. Berryman-*

34.     On November 13, 2018, Safeco supplied the expert report of its construction and damages expert, Michael J. Berryman.  *See* Exhibit 5, Expert Report of Michael J. Berryman ("Berryman Report").

35.     Berryman opines that Safeco followed industry standard methods in its determination of the proper cost to restore the storm damages to the Plaintiff's home.  The Safeco estimate expresses a scope of work that reasonably addresses observations that were

consistent with damages caused by storm. Exhibit 5, Berryman Report, at p. 23.

36.      Berryman states that the Safeco estimate total was adequate to restore the known storm damage. Exhibit 5, Berryman Report, at p. 24.

37.      Berryman states that in some areas, the roof shingles were damaged at the time of installation due to poor nailing practices, and these defects have given rise to localized shingle slippage. Exhibit 5, Berryman Report, at p. 10.

38.      Berryman adds that wind speeds recorded at the subject location from 2009 to the date of his inspection were less than those for which the shingles were likely designed. The affected shingles can be repaired using industry standard practices. Exhibit 5, Berryman Report, at p. 10.

39.      Berryman observed hail damage to the home's gutters, downspouts, roof valleys, roof ridges, and HVAC metal caps. The field areas of the roof were not damaged by hail. Exhibit 5, Berryman Report, at p. 20.

40.      Berryman opines that the roof exhibited signs of granular loss and blistering which are not uncommon in a roof that age, especially when it lacks sufficient ventilation. Exhibit 5, Berryman Report, at pp. 22-23.

41.      Edwards acknowledges an awareness of the roof's insufficient ventilation:

> I am hesitant to ask for code upgrade funds because it could very possibly not work out in your favor. Safeco could make the argument the roof would have been more resistant to hail and wind if proper roof ventilation had been installed originally; the roof was improperly installed = claim denied. The pipe jacks through the roof are not painted now. A good roofer would throw the item in anyway to make his work look good. Safeco is only responsible for putting you back into the condition you were in prior to loss.

Exhibit 5, Berryman Report, at pp. 22-23; Exhibit 6, October 6, 2017 Emails, KE_000448-

450.

42.     Berryman adds that the Wiley estimate is based upon a scope of work that goes well beyond the restoration of damages caused by storm.  Berryman states that the Wiley estimate is woefully inaccurate and without merit as it is inflated and misrepresents what will actually be required to restore the damage.  Exhibit 5, Berryman Report, at p. 25.

43.     Berryman states that Wiley's estimate is unreliable for determining the proper cost to restore the property to its pre-loss condition.  Exhibit 5, Berryman Report, at p. 25.

44.     Berryman explains that Wiley's estimate is based upon the premise that the roof is a 50-year shingle that is no longer manufactured.  This is false—CertainTeed Landmark 50 was merely renamed CertainTeed Landmark Premium, as confirmed by Edwards.  Exhibit 5, Berryman Report, at p. 25; Exhibit 7, CertainTeed Document, KE_000114.

45.     Moreover, Berryman's inspection proved conclusively that the shingles are a 40-year shingle, through multiple random location tests conducted on all slopes of the roof.  Exhibit 5, Berryman Report, at p. 25.

46.     Berryman opines that while the name of the shingle used on Plaintiff's roof has changed, the ability to repair a roof with Plaintiff's Landmark 40 shingles has continued.  Exhibit 5, Berryman Report, at p. 25.

47.     Berryman states that the scope of work in the Wiley estimate is excessive and contends that the roof should be replaced due to "substantial global damage," whereas the evidence demonstrates the roof is not "globally damaged" and can instead be repaired.  Exhibit 5, Berryman Report, at p. 25.

13

48.     Berryman adds that the Wiley estimate includes repairing damages to the master closet ceiling.  However, Berryman's examination of the roof above this location in conjunction with observations in the attic failed to identify a storm-created opening in the roof as the cause of the leak.  Exhibit 5, Berryman Report, at p. 26.

49.     Berryman states that Wiley also included 10% overhead and 10% profit for the services of a general contractor, even though such services are not reasonable, necessary, or likely.  Exhibit 5, Berryman Report, at p. 26.

*-Plaintiff's Lack of Supporting Evidence and Non-Compliance with Court Orders-*

50.     Plaintiff did not timely disclose any experts and has never supplied the expert disclosures required by FED. R. CIV. P. 26(a)(2)(B).

51.     Plaintiff did not timely disclose witnesses and exhibits in accordance with the Court's Scheduling Order.

52.     Plaintiff has not served any written discovery requests or taken any depositions in this matter.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  FED. R. CIV. P. 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Bennett v. Windstream Commc'ns, Inc.*, 30 F. Supp. 3d 1243, 1252 (N.D. Okla. 2014) (citing *Celotex Corp. v.*

14

*Catrett*, 477 U.S. 317, 322 (1986)); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Bennett*, 30 F. Supp. 3d at 1252-53 (citing *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (citations omitted).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  *Bennett*, 30 F. Supp. 3d at 1253 (citing *Adler*, 144 F.3d at 670) (citations omitted).  In essence, the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Bennett*, 30 F. Supp. 3d at 1253 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, (1986)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff."  *Bennett*, 30 F. Supp. 3d at 1253 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252(1986)).  Safeco respectfully submits that the record evidence in this case supports the entry of summary judgment.

## ARGUMENT AND AUTHORITY

**I.      Safeco Respectfully Submits that Summary Judgment is Proper on Plaintiff's Claim for Breach of Contract.**

Safeco respectfully submits that summary judgment is proper on Plaintiff's claim for breach of contract.  To recover on a breach of contract theory, Plaintiff must prove (1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the alleged breach.  *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843.  "Plaintiff has the burden, at the summary judgment stage, to cite to 'particular parts of materials in the record' supporting [his] contention that there is a genuine dispute as to whether [he] suffered a loss that Defendant did not cover."  *Harrison v. State Farm Fire and Cas. Co*., No. CIV-14-1219-R, 2015 WL 4208749, *3 (W.D. Okla. July 20, 2015) (quoting FED. R. CIV. P. 56(c)(1)(A).  *See id.* at *5 (granting summary judgment in favor the insurer on a contract claim where the insured claimed the insurer did not pay for all covered damage, but the insured failed to cite record evidence supporting this contention.)

Safeco respectfully submits that Plaintiff has not, and cannot, sustain his burden to cite any evidence showing a genuine dispute as to whether he suffered a loss that Safeco did not cover.  Plaintiff alleges that on April 25, 2017, a storm damaged his roof and caused interior water damage.  Statement of Undisputed Facts ("SOF") at ¶ 6.  Plaintiff failed to report a claim to Safeco until June 13, 2017—nearly two months later.  SOF at ¶ 5.  Safeco assigned the claim to its adjuster, Williams, who promptly reached out to Plaintiff, inspected the residence, and paid to repair damage to the exterior of the residence, including to repair the roof.  SOF at ¶¶ 8, 10-12.  Safeco declined to pay for the claimed interior water

damage, as its investigation revealed that the roof shingles were over-driven and the interior leaking was the result of a long-term leak. SOF at ¶¶ 13-15. Given that Plaintiff's Policy expressly excludes continuous or repeated seepage or leakage of water over a period of weeks, as well as faulty, inadequate, or defective workmanship—and also given the untimely reporting of Plaintiff's claim—the claimed interior water damage was plainly excluded under the Policy. SOF at ¶ 3.

Safeco respectfully submits that under these facts, summary judgment is appropriate. Safeco's expert, Berryman, has opined that Safeco followed industry standards in its evaluation and that the Safeco estimate expresses a proper scope of work. SOF at ¶ 35. Plaintiff claims that Safeco should have paid for additional repairs to the home, including a full roof replacement and repairs to interior water damage. Other than Edwards' conclusory assertion that Plaintiff's roof shingle is a 50-year shingle that is allegedly no longer manufactured, Plaintiff has offered no evidence that he was entitled to a full roof replacement. Rather, the undisputed record evidence shows that Plaintiff's roof is a 40-year shingle, meaning the roof can be repaired. SOF at ¶¶ 20, 26, 32, 44-45. Nor has Plaintiff ever supplied any evidence whatsoever showing that the interior water damage was anything other than the result of over-driven shingles and long-term leaking, which are expressly excluded under the Policy. Moreover, according to Safeco's expert, Berryman, the estimate of Plaintiff's contractor, Wiley, is woefully inaccurate, inflated, and meritless for a host of reasons. SOF at ¶¶ 47-49. Plaintiff has supplied no expert disclosures and did not timely identify any expert witnesses, fact witnesses, or exhibits to controvert the undisputed record evidence and expert disclosures supplied by Safeco.

17

Furthermore, Edwards' conduct in interfering with Safeco's re-inspection of Plaintiff's residence constitutes a material breach of Plaintiff's obligations under the Policy. Plaintiff retained Edwards as his public adjuster and authorized him to act on his behalf. SOF at ¶¶ 22-23.  Despite the fact that Safeco's initial inspection showed a 40-year shingle, rather than a 50-year shingle as claimed by Edwards, Safeco's adjuster, Williams, agreed to a re-inspection.  SOF at ¶ 26.  At the re-inspection, Edwards instructed Safeco's representatives to measure one particular shingle, and became upset when Williams stated he would randomly choose which shingles to gauge.  SOF at ¶¶ 28-29.  Edwards repeatedly moved Safeco's representative's ladder from safe access points, despite being told several times not to do so, causing an unsafe working condition.  SOF at ¶¶ 30-31.

Pursuant to the Policy and Oklahoma law, Plaintiff has a duty to cooperate with Safeco.  SOF at ¶ 4; *First Bank of Turley v. Fidelity and Deposit Ins. Co. of Maryland*, 1996 OK 105, 928 P.2d 298 (under Oklahoma law, an insured "has an obligation to cooperate with the insurer, which is both contractual and implied in law."); *Bryant v. Sagamore Ins. Co.*, No. 14-7039 (10th Cir. 2015) (unpublished) (attached as Exhibit 8) (upholding summary judgment to an insurer on an insured's breach of contract claim where an insured failed to cooperate with the insurer's investigation).  The Policy obligates Plaintiff to cooperate with Safeco, give immediate notice of any loss, protect the property from further damage, and to allow Safeco to inspect the damaged property as often as Safeco reasonably requires.  SOF at ¶ 4.  Plaintiff's lack of cooperation with Safeco, through his agent Edwards' interference with the re-inspection and creation of a safety hazard, constitutes a material breach of Plaintiff's obligations under the Policy.

Based on the foregoing, Safeco respectfully submits that summary judgment in its favor on Plaintiff's claim for breach of the insurance contract is appropriate. The undisputed record evidence demonstrates that Safeco has indemnified Plaintiff for all covered storm damage. Plaintiff has not, and cannot, carry his burden to show that Safeco failed to pay for any covered damages. Regardless, Plaintiff has materially breached his obligations under the Policy to cooperate with Safeco and to allow inspections of his insured residence.

## II.   Safeco Respectfully Submits that Summary Judgment is Proper on Plaintiff's Claim for Breach of the Duty of Good Faith and Fair Dealing.

Safeco respectfully submits that summary judgment is proper on Plaintiff's claim for breach of the duty of good faith and fair dealing. An insurer has a duty to deal fairly and in good faith with its insured. *Dunbar v. State Farm Mut. Auto. Ins. Co.*, Case No. 10-CV-330-GKF-TLW, 2011 WL 5878383, *7 (N.D. Okla. Nov. 23, 2011) (citing *Christian v. American Home Assurance Co.*, 1977 OK 141, 577 P.2d 899, 905). To establish a prima facie case on a bad faith claim, a plaintiff must show:

> 1) the insurer was required under the insurance policy to pay the insured's claim; 2) the insurer's refusal to pay the claim in full was unreasonable under the circumstances because either: a) it had no reasonable basis for the refusal, b) it did not perform a proper investigation of the claim, or c) it did not evaluate the results of the investigation properly; 3) the insurer did not deal fairly and in good faith with the insured; and 4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the injury sustained by the insured.

*Andres v. Okla. Farm Bureau Mut. Ins. Co.*, 2009 OK CIV APP 97, ¶ 16, 227 P.3d 1102, 1107. Plaintiffs have the burden of proof. *McCorkle v. Great Atlantic Ins. Co.*, 1981 OK

128, ¶ 20, 637 P.2d 583, 587.

### A.    Safeco Was Not Required Under the Insurance Policy to Pay Plaintiff Additional Insurance Benefits.

The first element of Plaintiff's "claim" fails as a matter of law, as Safeco was not required under the insurance Policy to pay Plaintiff additional insurance benefits.  Rather, as discussed above in relation to Plaintiff's claim for breach of contract, Safeco already paid Plaintiff all amounts owed to repair covered storm damage to Plaintiff's residence. *See supra* Section I.

In *Snow White, LLC v. State Auto Property and Casualty Ins. Co.*, this Court granted summary judgment on the insured's bad faith claim where the parties disagreed as to the scope of covered storm damage, because this Court found, "nothing in this record shows any conduct by [the insurer] which creates a genuine issue of material fact for trial on the issue of bad faith."  Case No. CIV-14-1397-F, 2016 WL 9558944, *5 (W.D. Okla. Oct. 14, 2016).  *See also Shanta, Inc. v. Nautilus Insurance Company*, CIV-15-872-R, 2017 WL 934720, *3-5 (W.D. Okla. Mar. 8, 2017) (granting summary judgment where the parties disagreed regarding the scope of roof repairs, but the plaintiff failed to provide any evidence that the insurer acted in bad faith); *Harrison*, 2015 WL 4208749, *5 ("Because the Court grants summary judgment for Defendant on Plaintiff's breach of contract claim, Plaintiff has failed to create a genuine dispute as to whether she was entitled to coverage under the policy and that payment for such coverage was not provided.  Therefore, the undersigned grants summary judgment for Defendant on Plaintiff's bad faith claim.").

As Safeco was not required to pay Plaintiff additional insurance benefits, Safeco

respectfully submits it cannot have acted in "bad faith," and summary judgment on Plaintiff's claim for breach of the duty of good faith and fair dealing is appropriate.

> ### B.      Safeco Acted Reasonably And, Therefore, Bad Faith Cannot Exist As a Matter of Law.

Additionally, Safeco respectfully submits that because it acted reasonably, bad faith cannot exist as a matter of law.  One necessary element of bad faith is that "the insurer's refusal to pay the claim in full was unreasonable under the circumstances because either: a) it had no reasonable basis for the refusal, b) it did not perform a proper investigation of the claim, or c) it did not evaluate the results of the investigation property."  *Andres*, 2009 OK CIV APP 97 at ¶ 16.  "'Where an insurer has demonstrated a reasonable basis for its actions, bad faith cannot exist as a matter of law,' and the insurer is entitled to summary judgment."  *Dunbar*, 2011 WL 5878383, at *7 (citing *Beers v. Hillory*, 2010 OK CIV APP 99, ¶ 26, 241 P.3d 285, 293).

Here, Safeco respectfully submits it acted reasonably.  Following its receipt of the claim, Safeco promptly opened a claim file and assigned an adjuster.  SOF at ¶¶ 7-8.  Two days later, Williams inspected the property, compiled an estimate, and sent a payment letter.  SOF at ¶¶ 10-12.  In that letter, Williams also clearly explained the partial denial for Plaintiff's interior water damages, which were not covered.  SOF at ¶¶ 13-15.  When Plaintiff's agent reached out to Safeco to contest this payment, he was connected with a Team Manager, Marroquin, who explained the claims decision and the appraisal process. SOF at ¶¶ 16-20.  Plaintiff never requested an appraisal.  SOF at ¶ 21.  Rather, he retained a public adjuster, Edwards, who contacted Safeco months later, insisting that Plaintiff's

roof was comprised of 50-year shingles that were no longer manufactured and demanding a re-inspection. SOF at ¶¶ 22-24. Despite Williams' observations during the initial inspection that Plaintiff's shingle was a 40-year shingle, Williams agreed to go forward with the re-inspection. SOF at ¶ 26. Edwards' improper conduct thwarted Safeco's attempts to re-inspect the insured property. SOF at ¶¶ 28-31. The conclusions of Safeco's expert, Berryman, show that Safeco's evaluation and payment were reasonable, whereas Plaintiff's claimed damages are inflated, meritless, and fundamentally flawed in multiple respects. SOF at ¶¶ 35-49.

Safeco's investigation, evaluation, and payment of Plaintiff's claim were prompt, thorough, and diligent. Safeco acted reasonably and appropriately. Therefore, Safeco respectfully submits that it has not acted in bad faith as a matter of law, and summary judgment on the bad faith claim is appropriate.

## C.       Safeco and Plaintiff Have a Legitimate Dispute As to Coverage.

Additionally, Safeco submits that summary judgment is proper on the basis that Plaintiff and Safeco have a legitimate dispute as to coverage. "An insurer's refusal to pay is not unreasonable or in bad faith when there is a legitimate dispute concerning coverage." *Dunbar*, 2011 WL 5878383, *17 (citing *Andres*, 2009 OK CIV APP 97 at ¶ 17). *See also Haltom v. Great Nw. Ins. Co.*, 460 F. App'x 751, 757 (10th Cir. 2012) ("it is clear under Oklahoma law that an insurer also does not breach its duty of good faith and fair dealing by . . . litigating with its insured where a legitimate and reasonable dispute exists as to coverage or the amount of the claim"). "The decisive question is whether the insurer has a good faith belief, *at the time its performance was requested, that it had justifiable reason*

*for withholding payment under the policy*." *Dunbar*, 2011 WL 5878383, at *7 (quoting *Duensing v. State Farm Mut. Auto Ins. Co.*, 2006 OK CIV APP 15, 131 P.3d 127 at ¶ 38 (emphasis in the original)).

Here, Plaintiff believes that Safeco's scope of work was insufficient. Plaintiff, relying on Wiley's estimate, believes that Safeco should have paid for additional damages, including a full roof replacement—rather than a repair—and should have covered interior water damages. In contrast, Safeco, relying on its adjuster's inspections and the plain language of the Policy, believes that it properly paid to repair Plaintiff's roof and correctly denied payment for interior long-term water damage. Safeco's position is reasonable given Williams' findings at the inspections, the Policy language, and the conclusions of its expert, Berryman. *See also Snow White, LLC*, 2016 WL 9558944, *4-5 (granting summary judgment on the bad faith claim where the insurer argued there was a legitimate coverage dispute and holding, "an insurer does not breach its duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a legitimate dispute as to coverage or the amount of the claim, and the insurer's position is reasonable and legitimate");

Therefore, summary judgment on Plaintiff's claim for breach of the duty of good faith and fair dealing is appropriate.

### D.      Safeco's Conduct Was Not the Direct Result of Any Injury to Plaintiff.

Plaintiff's bad faith claim also fails on grounds that Safeco's alleged conduct was not the direct cause of Plaintiff's injury. Where "there is no competent evidence from which a jury could reasonably find a causal nexus between the act(s) or omission(s) deemed tortious and the injury," the question of proximate cause may be determined by the Court.

*Gillham v. Lake Country Raceway*, 2001 OK 41, ¶ 7, 24 P.3d 858, 860.  Plaintiff's damages stem from the storm and not from Safeco's conduct.  There has been no breach of contract and no bad faith.  Therefore, LIC respectfully submits that summary judgment is proper on Plaintiff's claim for breach of the duty of good faith and fair dealing.

## III.   Safeco Respectfully Seeks Summary Judgment on Plaintiff's Claim for Punitive Damages.

Safeco respectfully submits that the record evidence does not support Plaintiff's claim for punitive damages.  As discussed above, there is no basis for an award of contract or bad faith damages against Safeco.  However, alternatively, there is certainly no support for the punitive damages claim.  *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 614-15 (10th Cir. 1994) (citing *McLaughlin v. National Benefit Life Ins. Co.*, 772 P.2d 383, 385, 387, 389 (Okla. 1988)).  Punitive damages do not, ipso facto, follow from every alleged breach of the duty of good faith and fair dealing.  *Willis*, 42 F.3d at 615 (citing *McLaughlin*, 772 P.2d at 385).  Under Oklahoma law, punitive damages may be awarded against an insurer for breach of the duty of good faith and fair dealing only if the insurer has acted in reckless disregard of its duty, or if the insurer breached its duty intentionally and with malice.  OKLA. STAT. tit. 23, § 9.1(B)-(D).  Here, there is no evidence to support the submission of punitive damages to a jury.

Plaintiff has not presented any evidence of acts that were intentionally wrongful or reckless.  As discussed above, Plaintiff's allegations do not support a claim for breach of the duty of good faith and fair dealing.  Accordingly, Plaintiff cannot recover punitive damages.  *See Rodebush v. Okla. Nursing Homes*, 1993 OK 160, 867 P.2d 1241, 1247

("The plea for punitive damages rests on the underlying claim, and if there is no recovery on the underlying claim, there can be no recovery of punitive damages."). "In the absence of a showing of [the requisite conduct for punitive damages], it would be improper to submit the issue of punitive damages to the jury." *Willis*, 42 F.3d at 615 (citations omitted). Safeco respectfully submits summary judgment on the issue of punitive damages is proper.

## CONCLUSION

Defendant Safeco Insurance Company of America respectfully requests that the Court enter judgment as a matter of law in favor of Safeco on Plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing as well as Plaintiff's request for punitive damages.

Dated:       December 3, 2018                    Respectfully submitted,

                                                 **HALL, ESTILL, HARDWICK,**
                                                 **GABLE, GOLDEN & NELSON, P.C.**

                                    By:    *s/William W. O'Connor*
                                           William W. O'Connor, OBA No.13200
                                           Jerrick L. Irby, OBA No. 30876
                                           Margo E. Shipley, OBA No. 32118
                                           320 South Boston Avenue, Suite 200
                                           Tulsa, OK  74103-3706
                                           Telephone:  (918) 594-0400
                                           Facsimile:  (918) 594-0505
                                           boconnor@hallestill.com
                                           jirby@hallestill.com
                                           mshipley@hallestill.com

                                           **ATTORNEYS FOR DEFENDANT,**
                                           **SAFECO INSURANCE COMPANY**
                                           **OF AMERICA**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of December, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Aaron D. Compton

**ATTORNEY FOR PLAINTIFF**

*s/William W. O'Connor*
William W. O'Connor

3782140.1:003439:00039

26